UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| WILLIAM D. WEHR-DARROCA, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 24-cv-3504 (RC) |
| | : | | |
| v. | : | Re Document No.: | 11 |
| | : | | |
| DISTRICT OF COLUMBIA, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

GRANTING DEFENDANTS' MOTION TO DISMISS

### I.  INTRODUCTION

This is a pre-enforcement constitutional challenge to a D.C. gun regulation. Defendants, the District of Columbia and two D.C. officials, have moved to dismiss the complaint for lack of subject-matter jurisdiction. The Plaintiffs—two individual gun owners and a nonprofit advocacy group—concede that under binding D.C. Circuit precedent they do not have standing. What they want is for the D.C. Circuit sitting *en banc* or the Supreme Court to overturn that precedent. So unlike the usual case, this litigation presents no factual or legal disputes for the Court to resolve. This Court's role is to grant the motion to dismiss.

### II.  BACKGROUND

In 2009, the District of Columbia banned firearm magazines capable of holding more than ten rounds of ammunition, which it labeled "large-capacity magazines." D.C. Code § 7-2506.01(b) (2009) ("the Ban"); *see* Firearms Control Amendment Act of 2008, D.C. Law 17-372, 56 D.C. Reg. 1365 (May 2, 2009). The Ban provides that "[n]o person in the District shall knowingly possess, sell, or transfer any ammunition feeding device that is, in fact, a large capacity ammunition feeding device, regardless of whether the device is attached to a firearm."

D.C. Code § 7-2506.01(b). A "large capacity ammunition feeding device" is defined as "a magazine, belt, drum, feed strip, or similar device that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition." *Id.* § 7-2506.01(c). Possession of a large-capacity magazine is a felony. *Id.* § 7-2507.06(a)(4).

In 2011, the D.C. Circuit upheld the Ban as constitutional. *See Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1244, 1264 (D.C. Cir. 2011). But after the Supreme Court in *New York State Rifle & Pistol Association v. Bruen* articulated a purely historical test for Second Amendment claims, 597 U.S. 1, 18–26 (2022), a group of plaintiffs brought a renewed a challenge to the Ban. *See Hanson v. District of Columbia* ("*Hanson I*"), 671 F. Supp. 3d 1 (D.D.C. Apr. 20, 2023). This Court denied their motion for a preliminary injunction, concluding that they were unlikely to succeed on the merits. *Id.* at 8–25. The D.C. Circuit affirmed and additionally held that the plaintiffs had not satisfied the other two preliminary injunction factors: irreparable harm and the balance of the equities. *See generally Hanson v. District of Columbia* ("*Hanson II*"), 120 F.4th 223 (D.C. Cir. 2024).

Shortly after the Circuit issued its decision in *Hanson II*, two gun owners who live and reside in D.C., William Wehr-Darroca and Gary Stemple, and the Firearms Policy Coalition ("FPC"), a Nevada-based interest group, brought this suit again challenging the Ban's constitutionality. Compl. ¶¶ 16–19; 24–77. They name as Defendants the District; Pamela A. Smith, the acting Chief of Police of the Metropolitan Police Department; and Brian L. Schwalb, the Attorney General for the District of Columbia (collectively, "Defendants"). *Id.* ¶¶ 20–22. Their one-count complaint seeks injunctive and declaratory relief. *Id.* at 22.

Both Wehr-Darroca and Stemple are licensed to carry concealed weapons within D.C. *Id.* ¶¶ 62–63, 66. They also both own registered handguns that come, by default, with magazines

capable of holding more than 10 rounds of ammunition.  *Id.* ¶¶ 63, 67.  Because those magazines are banned in the District, Wehr-Darroca and Stemple had to purchase replacement magazines that are compatible with D.C. law.  *Id.*  But for the Ban, both individual Plaintiffs would keep and bear magazines capable of holding more than 10 rounds.  *Id.* ¶¶ 64–65, 68–69.  Neither individual Plaintiff has been "specifically" threatened with enforcement of the Ban "beyond the threat to the general population."  *Id.* ¶ 70.  FPC claims at a high level of generality that the Ban injures its members, including Wehr-Darroca and Stemple.  *Id.* ¶¶ 16–17, 19.

Defendants filed a motion to dismiss arguing that the three Plaintiffs lack standing under binding D.C. Circuit precedent.  Defs.' Mot. Dismiss Pls.' Compl., ECF No. 11; Mem. P. & A. Supp. Defs.' Mot. Dismiss Pls.' Compl. ("Mot. Dismiss"), ECF No. 11.  Plaintiffs filed an opposition conceding that they do not have standing.  Pls.' Mem. P. & A. Opp'n Defs.' Mot. Dismiss ("Pls.' Opp'n"), ECF No. 13.  Defendants then filed a reply.  Reply Br. Further Supp. Defs.' Mot. Dismiss Pls.' Compl. ("Defs.' Reply"), ECF No. 14.  The motion to dismiss is thus ripe for review.

### III.  LEGAL STANDARD

Standing is an "irreducible constitutional minimum" that requires the party invoking the court's jurisdiction to establish three elements.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  First, the plaintiffs must show that they suffered an "injury in fact," or a harm that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)).  Second, they must demonstrate "a fairly traceable connection between [his proffered] injury and the complained-of conduct of the defendant."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).  And third, it must be "'likely,' as opposed to merely 'speculative,' that the injury

will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).  Injury in fact "requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972).  An organization may have standing on behalf of its members if "(1) at least one of [its] members has standing to sue in his or her own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of an individual member in the lawsuit." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 101 (D.C. Cir. 2019) (internal quotation omitted).

At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.  If a plaintiff lacks standing, the complaint must be dismissed for lack of subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).

## IV. ANALYSIS

Three D.C. Circuit opinions dictate the outcome of this case:  *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997); *Seegars v. Gonzales*, 396 F.3d 1248 (D.C. Cir. 2005); and *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008).  *Navegar* involved a pre-enforcement challenge to a federal law criminalizing the possession of certain types of firearms.  103 F.3d at 994.  To establish injury-in-fact in that context, the Circuit held that the plaintiff must face a "threat of prosecution" that is "genuine and imminent." *Id.* at 1001.  Otherwise, the plaintiff's injuries "would be too remote and speculative to render their challenges justiciable." *Id.*  In *Seegars*, the Circuit stated that a plaintiff bringing a constitutional challenge to "a criminal statute not burdening expressive rights and not in the form of appeal from an agency decision" must, under *Navegar*, show that "there exists a credible threat of prosecution thereunder." *Seegars*, 396 F.3d

4

at 1251, 1253 (citation modified). Plaintiffs bringing such challenges must allege either "prior threats against them" specifically or "characteristics indicating an especially high probability of enforcement against them." *Id.* at 1255. Two years after *Seegars*, the Circuit reaffirmed its central holding in *Parker*, confirming that plaintiffs bringing a pre-enforcement challenge to gun regulations must allege that they "have been singled out or uniquely targeted by the . . . government for prosecution." 478 F.3d at 375. Taken together, *Navegar*, *Seegars*, and *Parker* establish that a plaintiff does not have standing to bring a Second Amendment claim if his only alleged injury is that but for the challenged regulation, he would engage in the prohibited conduct. *Angelo v. District of Columbia*, 648 F. Supp. 3d 116, 126 (D.D.C. Dec. 28, 2022); *see also id.* at 124–26 (describing the holdings of *Navegar*, *Seegars*, and *Parker*).

That describes the individual Plaintiffs' allegations here. Wehr-Darroca and Stemple claim that but for the Ban, they would purchase and possess large-capacity magazines. Compl. ¶¶ 64, 68. They admit that they "have not specifically been threatened with enforcement of the Ban." *Id.* ¶ 70. Those allegations are plainly insufficient to establish their standing. *See*, *e.g.*, *Seegars*, 396 F.3d at 1254–55 (holding that plaintiffs did not have standing to challenge a pistol ban when they alleged that "but for" the ban, they would obtain and register pistols).

The thrust of Plaintiffs' argument is that *Navegar*, *Seegars*, and *Parker* were incorrectly decided. *See* Pls.' Opp'n at 4–12. Granted, multiple D.C. Circuit judges have called for reconsideration of those decisions. *See, e.g.*, *Seegars*, 396 F.3d at 1256–58 (Sentelle, J., dissenting) (characterizing *Navegar* and the *Seegars* majority decisions as creating "a hierarchy of Bill of Rights protections that dictates different standing analysis"); *Ord v. District of Columbia*, 587 F.3d 1136, 1146 (D.C. Cir. 2009) (Brown, J., dissenting in part) (calling on the *en banc* D.C. Circuit to "overrule *Navegar*"); *Seegars v. Gonzales*, 413 F.3d 1, 2 (D.C. Cir. 2005)

5

(mem.) (Williams, J.) (explaining his "call for rehearing en banc" of the panel decision in *Seegars*). But this Court is bound to follow controlling D.C. Circuit precedent unless and until the Circuit overrules that precedent *en banc* or intervening Supreme Court authority "eviscerate[s]" the law of the Circuit. *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc); *Alpine Secs. Corp. v. FINRA*, 121 F. 4th 1314, 1334 (D.C. Cir. 2024); *see also Critical Mass Energy Project v Nuclear Regul. Comm'n,* 975 F.2d 871, 876 (D.C. Cir. 1992) (noting that decisions of the D.C. Circuit "bind the circuit 'unless and until overturned by the court en banc or by Higher Authority'") (internal quotation omitted).

So the individual Plaintiffs lack standing. FPC does not have associational standing because it has not pointed to any individual member who would have standing to sue in his or her own right. *See* Mot. Dismiss at 7–9; *Elec. Priv. Info. Ctr.*, 928 F.3d at 101; *see also* Pls.' Opp'n at 20 (arguing that individual FPC members would "have standing to sue but for this [Circuit's] flawed precedent"). Plaintiffs acknowledge that under the "precedent created by the D.C. Circuit in *Navegar*, *Seegars*, and *Parker*, the Court must grant the District's motion." Pls.' Opp'n at 4; *see also Lujan*, 504 U.S. at 561 (holding that the party invoking the court's jurisdiction must show he has standing to sue). The Court therefore grants the motion to dismiss for lack of subject-matter jurisdiction.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED.** An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 22, 2025                                        RUDOLPH CONTRERAS
                                                                  United States District Judge